UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>MICHAEL J. BRETON, )<br>)<br>Defendant. ) | Criminal No. 17 CR 10017<br><br>VIOLATIONS:<br>15 U.S.C. §§78j(b) and 78ff and<br>17 C.F.R. §240.10b-5 (Securities Fraud)<br>18 U.S.C. §981 and<br>28 U.S.C. §2461 (Criminal Forfeiture) |

## INFORMATION

The United States Attorney charges that:

### General Allegations

1. At all times material to this Information, the defendant, MICHAEL J. BRETON, was a resident of Massachusetts.

2. At all times material to this Information, BRETON was the managing partner of Strategic Capital Management, LLC ("SCM"), which is an investment advisor located at 890 Winter Street, Suite 208, Waltham, Massachusetts.

3. At all times material to this Information, BRETON, through SCM, managed client investment accounts and had discretionary authority to purchase and sell publicly traded securities, which securities were traded on national securities exchanges, on behalf of SCM clients.

4. Beginning prior to November 2011 and continuing through at least July 2013, BRETON and SCM used Fidelity Investments to trade securities and as the custodian of the investments held in client accounts. In approximately July 2013, BRETON and SCM began using

1

Charles Schwab to trade securities and as the custodian of the investments held in client accounts. As part of the trading arrangements with first Fidelity and then Charles Schwab, BRETON was permitted to place block purchases and sales of securities through a master account and then later allocate the purchases and sales to specific client and other accounts.

5. Prior to approximately July 2013, BRETON and several members of BRETON's family maintained investment accounts at Fidelity, which accounts held various securities. In approximately July 2013, BRETON and his family members moved those accounts to Charles Schwab.

6. At all times material to this Information, BRETON and SCM represented to clients and regulators that, in accordance with SCM's Code of Ethics, "No principal or employee of our firm may put his or her own interest above the interest of any advisory client." With regard to the practice of "block trading," BRETON and SCM represented that block trades would be used "where possible and when advantageous to clients" and also that "[n]o client or account will be favored over another."

### Scheme to Defraud

7. Beginning prior to November 2011 and continuing through at least July 2016, BRETON engaged in a "cherry-picking" scheme, pursuant to which BRETON allocated profitable trades made in the SCM master account to his own and his family members' accounts and assigned unprofitable trades to client accounts.

8. In particular, BRETON, using the SCM master account, regularly purchased shares in publicly traded companies the day that those companies (or "issuers") announced earnings from the previous quarter. Specifically, BRETON purchased shares in those issuers shortly before the

2

earnings announcements and then allocated the shares after the earnings announcements. Thus, BRETON allocated the shares to one of BRETON's accounts or to the client accounts after BRETON knew material information as to whether the issuer had announced positive or negative news about its earnings, and thus after BRETON knew whether the trade was likely to be profitable in the short term. Throughout the scheme, BRETON allocated the more profitable trades to himself and allocated the unprofitable trades to his clients.

9. For example, on or about October 16, 2012, BRETON purchased 8,000 shares of Fortinet, Inc. ("FTNT") and 8,000 shares of Cree, Inc. ("CREE") in the master account shortly before each issuer announced earnings. After the earnings announcements, FTNT's share price decreased and CREE's share price increased. Approximately one hour after each earnings announcement, BRETON allocated all of the FTNT shares to client accounts and allocated all of the CREE shares to his account. On these two trades alone, BRETON earned more than $17,000, while his clients were allocated losses of more than $31,000. Throughout the scheme, BRETON allocated more than 350 trades in this manner and made more than $1,300,000 in profits on those trades.

## COUNT ONE
## (Securities Fraud)

10. Paragraphs 1 - 9 are re-alleged and reincorporated as if fully set forth herein.

11. Beginning no later than November 1, 2011 and continuing through at least July 2016, in the District of Massachusetts and elsewhere, the defendant,

**MICHAEL J. BRETON,**

knowingly and willfully, by the use of means and instrumentalities of interstate commerce and the mails, directly and indirectly to use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in contravention of Rule 10b-5 (17 C.F.R. Section 240.10b-5) of the Rules and Regulations promulgated by the Securities and Exchange Commission, and to (a) employ a device, scheme and artifice to defraud, (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of circumstances under which they were made, not misleading, and (c) engage in acts, practices and courses of business which would and did operate as a fraud and deceit upon any person, to wit, clients of Strategic Capital Management, LLC.

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5.

4

## FORFEITURE ALLEGATION
## 18 U.S.C. §981(a)(1)(C) and 28 U.S.C. §2461

12. Upon conviction of the offense in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5, set forth in Count One of this Information,

**MICHAEL J. BRETON,**

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of such offense.

13. If any of the property described in Paragraph 12, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 12 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

WILLIAM D. WEINREB
Acting United States Attorney

By: /s/ Sarah E. Walters
SARAH E. WALTERS
Assistant U.S. Attorney

Dated: January 25, 2017